ST. LOUIS COUNTY, et al., Appellants,

v.

PRESTIGE TRAVEL, INC.,
et al., Respondents.

No. SC 91228.

Supreme Court of Missouri,
En Banc.

June 28, 2011.

Joe D. Jacobson, Martin M. Green, Jonathan F. Andres, Fernando Bermudez, Green Jacobson PC, Clayton, for County and Visitors Commission.

James Bennett, Jennifer S. Kingston, Dowd Bennett LLP, Clayton, Elizabeth B. Herrington, McDermott Will & Emery LLP, Chicago, Brian Stagner, Chad Arnette, Kelly Hart & Hallman LLP, Ft. Worth, TX, James Karen, Jones Day, Dallas, Terrence J. O'Toole, Bryan Cave, St. Louis, for Online Travel Companies.

State Solicitor James R. Layton, Attorney General's Office, for Attorney General, who filed a brief as a friend of the Court.

ZEL M. FISCHER, Judge.

Appellants, St. Louis County and St. Louis Convention and Visitors Commission ("CVC") filed suit against Prestige Travel, Inc. and numerous other online travel companies that facilitate the booking of hotel and motel rooms via the internet.[1] St. Louis County and CVC argued Prestige and the other companies were required to pay hotel and tourism taxes imposed by §§ 502.500 to 502.550 of the revised ordinances of St. Louis County and §§ 67.601 to 67.626, RSMo 2000.[2] Prestige moved to dismiss the petition, and the circuit court

---

1. The defendants were: Prestige Travel, Inc.; Expedia, Inc., a Delaware corporation; Expedia, Inc., a Washington corporation; Hotels.com; Hotels.com, L.P.; Hotels.com GP, LLC; Hotwire, Inc.; Travelnow.com, Inc.; Lowestfare.com, LLC; Priceline.com Inc.; Travelweb, LLC; Travelocity.com LP; Travelocity.com, Inc.; Site59.com, LLC; Travelport, Inc.; Tripnetwork, Inc.; Orbitz, LLC; Orbitz, Inc.; Onetravel, Inc.; Internetwork Publishing Corp.; Maupin–Tour Holdings, LLC; and Interactive Hotel Solutions, Inc. For the purposes of this opinion, "Prestige" refers to the defendants collectively.

2. All statutory references are to RSMo 2000, unless otherwise indicated.

overruled the motion. Shortly thereafter, H.B. 1442, specifically exempting online travel companies such as Prestige from the tax, was passed. Prestige filed a motion to reconsider its motion to dismiss, and the circuit court dismissed the case. St. Louis County and CVC appeal. Judgment affirmed.

## Facts

St. Louis County and CVC filed suit against Prestige. They alleged that Prestige contracted with hotel/motel operators for hotel rooms at negotiated discount rates and then sold or resold the rooms to transient guests at a marked-up price. Prestige then remitted only the discount price to the hotel/motel operator and kept the difference. St. Louis County and CVC alleged that Prestige did not collect the taxes required by §§ 502.500 to 502.550 of the revised ordinances of St. Louis County (the "hotel tax") and §§ 67.601 to 67.626 (the "tourism tax"). Specifically, St. Louis County and CVC alleged that Prestige did not collect the hotel and tourism taxes as a percentage of the marked-up price, but rather as a percentage of the lower discount price, or Prestige did not collect these taxes on the hotel rooms they sold or resold.

Prestige moved to dismiss the petition on the ground that only those who operate hotels or motels within St. Louis County are required to collect and remit the hotel and tourism taxes. Prestige also argued that these taxes did not apply to the amount paid by transient guests in excess of the discount price paid by Prestige to hotel/motel operators because the difference between the marked-up price and the discount price was not a room charge, but rather Prestige's compensation for its reservation services. The circuit court overruled Prestige's motion to dismiss.

While the case was pending, House Bill No. 1442 ("H.B.1442") was enacted, titled "An Act to repeal [eleven statutory sections] and to enact in lieu thereof nineteen new sections relating to taxes...." The bill included section 1, which provides:

Notwithstanding any other provisions of law to the contrary, any tax imposed or collected by any municipality, any county, or any local taxing entity on or related to any transient accommodations, whether imposed as a hotel tax, occupancy tax, or otherwise, shall apply solely to amounts actually received by the operator of a hotel, motel, tavern, inn, tourist cabin, tourist camp, or other place in which rooms are furnished to the public. Under no circumstances shall a travel agent or intermediary be deemed an operator of a hotel, motel, tavern, inn, tourist cabin, tourist camp, or other place in which rooms are furnished to the public unless such travel agent or intermediary actually operates such a facility.... This section is intended to clarify that taxes imposed as a hotel tax, occupancy tax, or otherwise shall apply solely to amounts received by operators, as enacted in the statutes authorizing such taxes.

Prestige filed a notice of supplemental authority and motion for reconsideration requesting the circuit court reconsider its ruling on the motion to dismiss. St. Louis County and CVC filed a response to the motion to dismiss admitting that H.B. 1442 "eviscerate[ed]" their claims but preserving "their right to challenge the enactment of the statutory revisions" in that H.B. 1442 "violates the original purpose, single subject, and clear title requirements of Missouri's Constitution."

The circuit court conducted a hearing on Prestige's motion for reconsideration. The circuit court then dismissed the petition with prejudice. St. Louis County and CVC appeal.

## Standard of Review

This Court has exclusive jurisdiction over this appeal under article V, section 3 of the Missouri Constitution as the appeal involves the validity of a statute of this State. "Constitutional challenges to a statute are reviewed *de novo.*" *Rentschler v. Nixon*, 311 S.W.3d 783, 786 (Mo. banc 2010). "An act of the legislature carries a strong presumption of constitutionality." *Missouri Ass'n of Club Executives v. State*, 208 S.W.3d 885, 888 (Mo. banc 2006). "A statute is presumed valid and will not be held unconstitutional unless it clearly contravenes a constitutional provision." *Rentschler*, 311 S.W.3d at 786. The person challenging the validity of the statute has the burden of proving the act "clearly and undoubtedly" violates the constitution. *Id.* Further, "[t]axing statutes must be construed strictly, and taxes are not to be assessed unless they are expressly authorized by law." *St. Louis Country Club v. Admin. Hearing Comm'n of Missouri*, 657 S.W.2d 614, 617 (Mo. banc 1983).

## Analysis

### *Constitutional Challenges*

#### 1. Article III, section 39(5)

St. Louis County and CVC argue that H.B. 1442 violates article III, section 39(5) of the Missouri Constitution in that it attempts to extinguish without consideration the indebtedness of Prestige for the accrued room taxes. To prevail in this argument, St. Louis County and CVC must show that Prestige owed an indebtedness, liability, or obligation to St. Louis County prior to the effective date of H.B. 1442 and that H.B. 1442 extinguished that indebtedness, liability, or obligation without consideration. *See Beatty v. State Tax Comm'n*, 912 S.W.2d 492, 498 (Mo. banc 1995).

Prestige responds that St. Louis County and CVC waived their constitutional challenge based on article III, section 39(5). "It is firmly established that a constitutional question must be presented at the earliest possible moment 'that good pleading and orderly procedure will admit under the circumstances of the given case, otherwise it will be waived.'" *Callier v. Dir. of Revenue, State of Mo.*, 780 S.W.2d 639, 641 (Mo. banc 1989) (quoting *Meadowbrook Country Club v. Davis*, 384 S.W.2d 611, 612 (Mo.1964)). To properly raise a constitutional question, one must:

(1) raise the constitutional question at the first available opportunity; (2) designate specifically the constitutional provision claimed to have been violated, such as by explicit reference to the article and section or by quotation of the provision itself; (3) state the facts showing the violation; and (4) preserve the constitutional question throughout for appellate review.

*United C.O.D. v. State*, 150 S.W.3d 311, 313 (Mo. banc 2004). Prestige contends that because St. Louis County and CVC failed to raise the article III, section 39(5) challenge in their response to Prestige's motion for reconsideration or in their notice of appeal, this challenge was waived.

The Missouri rules do not recognize a motion for reconsideration, and St. Louis County and CVC were not required to file a response to Prestige's motion for reconsideration. However, they did file a response and raised constitutional claims based on other constitutional provisions discussed below but failed to make a challenge based on article III, section 39(5).

St. Louis County and CVC waived their article III, section 39(5) constitutional challenge by failing to raise it at the earliest opportunity. Although there are no cases directly on point, this case is analogous to those in which a party failed to raise a constitutional claim in a motion for new trial following a court-tried case.

To preserve a constitutional question for review in this Court, it must be raised at

the earliest possible opportunity; the relevant sections of the Constitution must be specified; the point must be preserved in the motion for new trial, if any; and, it must be adequately covered in the briefs.

*In re H.L.L.*, 179 S.W.3d 894, 897 (Mo. banc 2005). Like a motion for new trial in a court-tried case, a response to a motion for reconsideration is not required, but when one is filed, constitutional claims must be raised. This is in keeping with the general rule that a constitutional question must be presented at the earliest opportunity. *Callier*, 780 S.W.2d at 641.

■■■ Even if this challenge was not waived, it lacks merit. To find a violation of article III, section 39(5), it is essential to determine whether the statutes as they existed prior to the enactment of H.B. 1442 imposed a tax on Prestige. There are two relevant statutes at issue: the hotel tax and the tourism tax.

Section 67.657.4 authorizes the governing body of a county to "submit to the voters of the county a tax not to exceed the three and one-half percent on the amount of sales or charges for all sleeping rooms paid by the transient guests of hotels and motels situated within the county involved, and doing business within such county. . . ." In accordance with the enabling statute, St. Louis County imposed the hotel tax set out in revised ordinances of St. Louis County §§ 502.500 to 502.550. The hotel tax imposes a tax of three and one-half percent on "the amount of sales or charges for all sleeping rooms paid by the transient guests of hotels and motels situated within St. Louis County, Missouri." *Id.* § 502.500.

Separately, § 67.619.1 establishes the tourism tax. Section 67.619.1 authorizes St. Louis County to impose a convention and tourism tax "not to exceed three and three-fourths percent on the amount of sales or charges for all sleeping rooms paid by the transient guests of hotels and motels situated within the city and county involved, and doing business within such city and county." Like the hotel tax, the tourism tax imposes a tax on the amount of sales or charges for "sleeping rooms" and imposes the obligation to collect and remit the tax on "[e]very person receiving any payment or consideration upon the use of any sleeping room from the transient guest or guests of any hotel or motel." Section 67.624.1.

St. Louis County and CVC argue that because the language in both the hotel tax and tourism tax *"paid by the transient guests* of hotels and motels . . ." focuses on the amount paid by the guest rather than the amount received by the operator, Prestige clearly had a tax obligation under the statute prior to H.B. 1442. St. Louis County and CVC do not show, however, that the statute clearly and undoubtedly imposes a tax on Prestige.

The hotel tax implemented in § 502.500 of the ordinance is "imposed and levied within the boundaries of St. Louis County, Missouri." Section 502.520 states: "Persons Liable.—The person, firm or corporation, subject to the tax imposed by Section 502.500 shall collect the tax from the transient guests. . . ." The obligation to make and file a return of the hotel tax is imposed only on operators of hotels and motels pursuant to § 502.530, which requires "[e]very person, firm or corporation engaged in the business of operating a hotel or motel shall, on the forms designed and furnished by the [licensing director of St. Louis County], make and file a verified quarterly return. . . ." And in the event the tax is not paid, the ordinance authorizes the director of revenue to file a lien in the city or county in which the "owner(s) of the hotel or motel reside." *Id.* § 502.545.

■■■ The seminal rule of statutory construction is to ascertain the intent of

the legislature from the language used and to consider the words used in their plain and ordinary meaning. *Turner v. School Dist. of Clayton,* 318 S.W.3d 660, 665 (Mo. banc 2010). "Where a statute's language is clear, courts must give effect to its plain meaning and refrain from applying the rules of construction unless there is some ambiguity." *Ross v. Dir. of Revenue,* 311 S.W.3d 732, 735 (Mo. banc 2010). Where statutory interpretation is necessary, statutory language is considered in context and in comparison with other sections to determine its meaning. *Id.* Here, that statutory language is clear and statutory construction is unnecessary.

■■■ Even if it were determined that the hotel tax is ambiguous about who must pay, Prestige clearly has no tax obligation. When read in context, it is clear the obligation to file the tax was placed solely on those "engaged in the business of operating a hotel or motel." This supports the finding that Prestige was not liable for the tax. Furthermore, because taxing statutes must be construed strictly, and taxes are not to be assessed unless they are expressly authorized by law, this Court will not read a tax obligation into the law where one was not clearly expressed. *See St. Louis Country Club,* 657 S.W.2d at 617.[3]

■■■ Similar to the hotel tax, the tourism tax is a tax on "the amount of sales or charges for all sleeping rooms paid by the transient guests of hotels and motels situated within the city and county involved, and doing business within such city and county." Section 67.619.1. This section clearly and plainly provides the tax is levied only on those doing business within St. Louis County.

Even if the tax is not levied only on St. Louis businesses, Prestige is not liable because it does not provide sleeping rooms. The tourism tax states that "[e]very person receiving any payment or consideration upon the use of any sleeping room from the transient guest or guests of any hotel or motel ... is exercising the taxable privilege of operating or managing a business subject to the provisions of sections 67.601 to 67.626." Section 67.624.1. St. Louis County and CVC do not show that the amount Prestige received for services was for "sleeping rooms." Prestige is an internet company that facilitates reservations of hotel and motel rooms between the hotels or motels and transient guests. As St. Louis County and CVC admit, Prestige collects funds from the transient guests and remits a portion of those funds to the operators of the hotels or motels. It follows that the money Prestige retains is compensation for facilitating a reservation, not providing a sleeping room.

Again, even if it were determined that this statute is ambiguous as to who is subject to the tourism tax, the tax is to be construed against the taxing authority. Taxes are not to be assessed unless they are expressly authorized, and St. Louis County and CVC have failed to demonstrate that the tourism tax clearly imposed a liability on Prestige. *See St. Louis Country Club,* 657 S.W.2d at 617.

### 2. Original Purpose

■■■ St. Louis County and CVC argue that several sections of H.B. 1442 violate the original purpose requirement of Missouri Constitution article III, section 21. Article III, section 21 states, "No law shall

---

**3.** When the statutes and ordinances governing the hotel tax are read in relation to one another, as required by the applicable rules of statutory construction, it is clear the hotel tax was meant to apply to hotel and motel operators, not to online travel companies such as Prestige. *See, e.g., Lane v. Lensmeyer,* 158 S.W.3d 218, 226 (Mo. banc 2005) ("Statutes involving the assessment, levy and payment of taxes should be construed in context with each other.").

be passed except by bill, and no bill shall be so amended in its passage through either house as to change its original purpose." St. Louis County and CVC note that the version of H.B. 1442 originally introduced was entitled "An Act to repeal ... and to enact in lieu thereof three new sections relating to city sales taxes," but the final version's title was more general— "An Act to repeal [eleven statutory sections] and to enact in lieu thereof nineteen new sections relating to taxes...." Consequently, they argue, several provisions of H.B. 1442 fall outside the original purpose of "city sales tax." Specifically, St. Louis County and CVC point to section 1 of H.B. 1442 and §§ 67.2000, 70.220, 137.1040, and 138.431.

 The original purpose is measured at the time of the bill's introduction. *Stroh Brewery Co. v. State*, 954 S.W.2d 323, 326 (Mo. banc 1997). However, this Court has repeatedly observed that "the Constitution does not require that the original purpose be stated anywhere, let alone in the title as introduced. Original purpose is the general purpose, 'not the mere details through which and by which that purpose is manifested and effectuated.'" *McEuen ex rel. McEuen v. Missouri State Bd. of Educ.*, 120 S.W.3d 207, 210 (Mo. banc 2003) (quoting *Mo. State Med. Ass'n v. Mo. Dep't of Health*, 39 S.W.3d 837, 839 (Mo. banc 2001)).

 "The restriction is against the introduction of matter that is not germane to the object of the legislation or that is unrelated to its original subject. Alterations that bring about an extension or limitation of the scope of the bill are not prohibited; even new matter is not excluded if germane." *Stroh Brewery Co.*, 954

S.W.2d at 326. Here, the original purpose of H.B. 1442 was regulating taxes even though the original title stated "relating to city sales taxes." Regulation of taxes was also the purpose of the final version of the bill.

St. Louis County and CVC argue that § 67.2000 is not germane to taxes. Section 67.2000 creates an exhibition center and recreational facility district, and it authorizes a sales tax within that district. The sales tax is germane to the original purpose of H.B. 1442—to regulate taxes. Likewise, St. Louis County and CVC contend § 70.220 is not germane to taxes. Section 70.220 authorizes any municipality or political subdivision to enter into cooperation agreements with other municipalities and political subdivisions. This section also provides that such entities can contract to share tax revenues.[4]

### 3. Clear Title and Single Subject Challenge

 St. Louis County and CVC argue that the title of H.B. 1442 is so general that it did not fairly apprise the legislature or the public of what was contained within it and that §§ 67.2000, 70.220, 137.1040, and 138.431 do not relate to sales taxes. None of these particular provisions are at issue in this case.

An extensive analysis of the case law regarding the challenges based on Missouri Constitution article III, sections 21 and 23 is not warranted in this case because the holding in *Hammerschmidt v. Boone County*, 877 S.W.2d 98, 103 (Mo. banc 1994), requires the specific provisions alleged to violate the original purpose, clear title, and single subject provisions to be severed rather than declaring the entire bill invalid.[5]

---

4. Clearly, § 137.1040, authorizing a new real property tax, and § 138.431, changing the procedure in administrative hearings in the State Tax Commission, are germane to the

regulation of taxes, despite St. Louis County's and CVC's arguments to the contrary.

5. For an extensive analysis of the case law interpreting Missouri Constitution article III,

■ The current state of law does not support St. Louis County and CVC's argument that the bill should be invalidated in its entirety.[6] When the procedure by which the legislature enacted a bill violates the Constitution, severance is appropriate when this Court is convinced beyond a reasonable doubt that the specific provisions in question are not essential to the efficacy of the bill. *Hammerschmidt*, 877 S.W.2d at 103–04.

The challenged sections, §§ 67.2000, 70.220, 137.1040, and 138.431, arguably all involve independent tax-related provisions. But even if individually they would not withstand a constitutional challenge made by an interested party, it cannot be said that these sections are so essential to the efficacy of H.B. 1442 that the legislature would not have passed the bill without them or that the hotel and tourism tax provisions of H.B. 1442, standing alone, are incomplete or incapable of being executed in accordance with legislative intent. Because this Court presumes severability, and the challenged provisions, if unconstitutional, would be severed from the bill, the remainder would remain intact. *See Hammerschmidt*, 877 S.W.2d at 103–04; *Rizzo v. State*, 189 S.W.3d 576, 581 (Mo. banc 2006) (severing a section of a bill prohibiting federal criminals from running for office because this section violated the

---

section 23, see Alexander R. Knoll, *Tipping Point: Missouri Single Subject Provision*, 72 Mo. L. REV. 1387 (2007). For an analysis of Missouri Constitution article III, section 21, see Martha J. Dragich, *State Constitutional Restrictions on Legislative Procedure: Rethinking the Analysis of Original Purpose, Single Subject, and Clear Title Challenges*, 38 HARV. J. ON LEGIS. 103 (2001).

6. It has been persuasively articulated that the judicially created doctrine of severance from the *Hammerschmidt* decision was a bad concept and in fact does damage to the legislative process and the doctrine of separation of powers. For example, a University of Pittsburgh Law Review article studied many state single subject provisions from around the nation and outlined a compelling case for striking down an entire bill. The author noted, "[w]ith respect to riders, severing them fails to provide legislators with an incentive not to engage in this behavior" and, in fact, "encourages legislators to attach riders." Michael D. Gilbert, *Single Subject Rules and the Legislative Process*, 67 U. PITT. L. REV. 803, 867 (2006). The rationale for this argument is that these unrelated provisions, if detected, "will simply be removed and can be reattached to another bill," resulting in minimal political backlash. *Id.* However, "if the presence of a rider leads to invalidation of an entire bill, legislators who attached the rider will pay a higher price." *Id.* That is, "other legislators, whose hard-fought political bargain was undone because of the rider, may be incensed and less likely to bargain with the

culprits, and citizens may be enraged by the delay or failure to enact important legislation." *Id.* at 867–68. Therefore, "[f]ear of these penalties may prevent riders from be attached in the first place." *Id.* at 868.

A recent University of Missouri Law Review article gave another reason the doctrine of severance set out in *Hammerschmidt* is problematic, stating:

Another argument in favor of striking down the entire bill as unconstitutional is motivated by a desire to protect the separation of powers between the legislature and the judiciary. Since legislation is often the result of much debate and political tradeoffs, if a judge takes away only one provision of a bill, presumably, at least one legislator would be upset. In fact, if this provision were excised prior to passage, the bill might not have had enough support to garner enough votes to pass. Therefore, if the courts sever only a portion of a bill, they may be subverting the legislative process and allowing legislation that might not have received enough votes to become law.

Knoll, *supra* note 5 at 1392–93. As the frequency of litigation increases, even with the short statute of limitations that is provided in § 516.500, RSMo 2000, there may come a time when this Court should reconsider whether the judicial doctrine of severance has served to support and protect the Missouri Constitution. Mo. Const. article III, section 15; Mo. Const. article VII, section 11; section 476.280, RSMo 2000.

single subject requirement where the subject of the bill was "relating to political subdivisions"); *Missouri Ass'n of Club Executives,* 208 S.W.3d at 888–89 (severing portions of a bill governing "intoxication-related traffic offenses" that related to adult entertainment because they violated the original purpose requirement); *National Solid Waste Management Ass'n v. Director of Dept. of Natural Resources,* 964 S.W.2d 818 (Mo. banc 1998) (severing a section of a bill relating to hazardous waste because it was a clear title violation where the title of the bill was "relating to solid waste management").

## Conclusion

The judgment of the circuit court is affirmed.

All concur.