**CITY OF BRANSON, Appellant,**

v.

**HOTELS.COM, LP; Hotwire, Inc.; Trip Network, Inc. (d/b/a Cheap Tickets.com); Travelport, Inc. (f/k/a Cendant Travel Distribution Services Group, Inc.); Expedia, Inc.; Internetwork Publishing Corp. (d/b/a Lodg-**

ing.com); LowestFare.com, Incorporated; Maupin–Tour Holding, LLC; Orbitz, LLC; Priceline.com Incorporated; Site59.com, LLC; Travelocity.com, LP; Travelweb LLC; Travelnow.com, Inc.; Travelzoo, Inc.; and Interactive Hotel Solutions, Inc., Respondents.

No. SD 31854.

Missouri Court of Appeals,
Southern District,
Division One.

Jan. 23, 2013.

Motion for Rehearing and/or Transfer to Supreme Court Denied Feb. 14, 2013.

Application for Transfer to Supreme Court Denied April 30, 2013.

Gregory W. Aleshire, Springfield, MO, for Appellant.

Monte P. Clithero, Springfield, MO, for Respondents.

WILLIAM W. FRANCIS, JR., J.

City of Branson ("Branson") appeals the trial court's grant of a motion to dismiss filed by Hotels.com, L.P., *et al.*,[1] which dismissed with prejudice all counts of Branson's "FIRST AMENDED PETITION." Branson now asserts two points relied on relating to the dismissal for failure to state a cause of action, as well as the trial court's reliance on a recent case from the Supreme Court of Missouri. We affirm the judgment of the trial court.

**Factual and Procedural Background**

On December 28, 2006, Branson filed its initial petition against the OTCs; an amended petition was thereafter filed on January 23, 2007. The amended petition set out that Branson's Municipal Code ("the Code") granted Branson the right to impose a four percent tourism tax on the gross proceeds from the rental of hotel rooms and other accommodations within its boundaries.[2] Specifically, section 82–152(*l* )(a) of the Code required:

> Every person engaged in the business of renting, leasing or letting living quarters, sleeping accommodations, rooms or a part thereof in connection with any hotel, motel, condominium unit, time-share interest in condominiums, campground or tourist court, all as defined in this subsection, shall collect at the time of sale or consumption and pay to the city a tourism tax equal to four percent of the price paid or charged by transient guests.

The collection duties for this four percent tourism tax were then set out in section 82–159(a) of the Code:

> The tourism tax levied pursuant to this article shall be paid by the purchaser or user to the seller, and it shall be the duty of each and every seller in this city to collect from the purchaser or user the full amount of the tourism tax levied by this article, or an amount equal as nearly as possible or practicable to the average equivalent thereof.

Based on the aforementioned ordinances, Branson maintained in its petition that the OTCs

> contract with hotels operating within [Branson] for rooms at negotiated discounted room rates. [The OTCs] then mark up the prices on their inventory of rooms and sell the rooms at a higher price to the consumers who occupy the rooms. [The OTCs] charge and collect

---

1. In addition to Hotels.com, the First Amended Petition was brought against the following parties: Hotwire, Inc.; Trip Network, Inc. (d/b/a Cheap Tickets.com); Travelport, Inc. (f/k/a Cendant Travel Distribution Services Group, Inc.); Expedia, Inc.; Internetwork Publishing Corp. (d/b/a Lodging.com); LowestFare.com, Incorporated; Maupin–Tour Holding, LLC; Orbitz, LLC; Priceline.com Incorporated; Site59.com, LLC; Travelocity.com, LP; Travelweb LLC; Travelnow.com, Inc.; Travelzoo.com, Inc.; and Interactive Hotel Solutions, Inc. The majority of the aforementioned defendants are "online travel companies." As such, we shall refer to them collectively as "OTCs," as was done in the pleadings and proceedings below.

2. Section 94.800 grants Branson the specific right to levy a tourism tax. Section 94.802.1(1) then goes on to limit the amount of that tax to four percent on the "price paid or charged to any person for rooms or accommodations paid by transient guests of hotels, motels, condominium units, time-share interests in condominiums, campgrounds, and tourist courts situated within the municipality ... [.]"

All statutory references are to RSMo 2000.

the hospitality fees and accommodations taxes from occupants at the time of the sale based on the marked up room rates, but only remit amounts based on the lower, negotiated room rates to the hotel who then remits the lower tax amounts to [Branson].

[The OTCs] keep the difference between the amount charged to the public and the amount remitted to the hotels ... [such that their] practices are in violation of the Tourism Tax Ordinance [of Branson].

Accordingly, Branson argued that because "seller" is defined in section 82–151 of the Code as "the person selling or furnishing tangible personal property or rendering services ... [,]" the OTCs, who engage " 'in the business of renting, leasing or letting living quarters, sleeping accommodations, rooms or a part thereof' were required to collect the full tourism taxes from the consumers of the rooms and pay them to [Branson]." As a result, Branson alleged in Count I "DECLARATORY JUDGMENT" that "the Tourism Tax is lawful and enforceable against the [OTCs]"; in Count II that a "VIOLATION OF TOURISM TAX ORDINANCE" would entitle it to the difference in the amount of taxes paid and those owed; and in Count III "CONVERSION" that the OTCs "willfully, wantonly, and with conscious disregard ..." took money owed to Branson under the tourism tax ordinance.

On July 29, 2011, the OTCs filed a motion to dismiss the amended petition on the basis that Branson's petition failed "to state a claim upon which relief can be granted[ ]" due to the legislature's enactment of section 67.662, RSMo Cum.Supp. 2010,[3] which "expressly provides that Missouri's tourism tax statutes and ordinances do not apply—and never applied—to the OTCs." Section 67.662 provides:

Notwithstanding any other provisions of law to the contrary, any tax imposed or collected by any municipality, any county, or any local taxing entity on or related to any transient accommodations, whether imposed as a hotel tax, occupancy tax, or otherwise, *shall apply solely to amounts actually received by the operator* of a hotel, motel, tavern, inn, tourist cabin, tourist camp, or other place in which rooms are furnished to the public. *Under no circumstances shall a travel agent or intermediary be deemed an operator of a hotel, motel, tavern, inn, tourist cabin, tourist camp, or other place in which rooms are furnished to the public unless such travel agent or intermediary actually operates such a facility.* This section shall not apply if the purchaser of such rooms is an entity which is exempt from payment of such tax. This section is intended to clarify that taxes imposed as a hotel tax, occupancy tax, or otherwise shall apply solely to amounts received by operators, as enacted in the statutes authorizing such taxes.

(Emphasis added). The OTCs further argued dismissal was warranted based on the Supreme Court of Missouri's decision in *St. Louis Cty. v. Prestige Travel, Inc.,* 344 S.W.3d 708 (Mo. banc 2011), wherein the court dismissed a lawsuit against some of the same OTCs for violation of a similar ordinance.

On September 13, 2011, Branson filed its suggestions in opposition to the motion to dismiss. In its suggestions, Branson argued its petition should not be dismissed as it "will [s]how that the OTCs are 'Operators' as that term is used in [s]ection 67.662[,] and therefore, required to remit tax to [Branson]." In support of that argument, Branson maintained under the

---

**3.** Hereinafter when cited, § 67.662 references RSMo Cum.Supp.2010.

"merchant model" of business that it could prove the OTCs "controlled" and/or "directed" hotel rooms be furnished to customers, thereby making them "operators" under section 67.662. It further argued the Supreme Court's decision in *Prestige Travel* is distinguishable from the present matter.

On January 26, 2012, a hearing was held on the OTCs' motion to dismiss. On March 4, 2012, without a stated explanation for its reasoning, the trial court dismissed Branson's "First Amended Petition and all counts thereof" with prejudice. This timely appeal followed.

Branson presents the following points relied on:

I. THE TRIAL COURT ERRED IN GRANTING THE OTCS' MOTION TO DISMISS BECAUSE BRANSON HAS STATED A CAUSE OF ACTION IN THAT FURTHER DISCOVERY AND PROSECUTION OF THIS CASE WILL ALLOW A TRIER OF FACT TO FIND THAT THE OTCS OPERATE UNDER A MERCHANT MODEL OF BUSINESS THAT MAKES THEM OPERATORS WITHIN THE MEANING OF SECTION 67.662 ... AND THEREFORE RESPONSIBLE FOR REMITTING TAXES TO BRANSON UNDER ITS TOURISM TAX ORDINANCE.

 . . . .

II. THE TRIAL COURT ERRED IN GRANTING THE OTCS' MOTION TO DISMISS WITH PREJUDICE BECAUSE IT RELIED ON THE MISSOURI SUPREME COURT'S DECISION IN *ST. LOUIS COUNTY v. PRESTIGE TRAVEL, INC.*, 344 S.W.3d 708 (Mo. BANC 2011)[,] IN THAT THE CONSTITUTIONAL ARGU-MENTS ADVANCED BY ST. LOUIS COUNTY IN *PRESTIGE TRAVEL* ARE CLEARLY DIFFERENT THAN THE ISSUES AND ARGUMENTS ADVANCED BY BRANSON IN THIS CASE.

### Standard of Review

 This Court reviews a trial court's decision to grant a motion to dismiss under a *de novo* standard of review. *Ryann Spencer Group, Inc. v. Assurance Co. of America*, 275 S.W.3d 284, 287 (Mo.App. E.D.2008). "When reviewing the dismissal, we examine the pleadings, allowing the broadest intendment, treating all alleged facts as true, and construing the allegations in favor of the pleader, to determine whether they involve principles of substantive law." *Id.* "A court reviews the petition 'in an almost academic manner, to determine if the facts alleged meet the elements of a recognized cause of action, or of a cause that might be adopted in that case.'" *City of Lake Saint Louis v. City of O'Fallon*, 324 S.W.3d 756, 759 (Mo. banc 2010) (quoting *Nazeri v. Mo. Valley Coll.*, 860 S.W.2d 303, 306 (Mo. banc 1993)). "In so doing, a court takes a plaintiff's averments as true and liberally grants plaintiff all reasonable inferences. It will not weigh the credibility or persuasiveness of facts alleged." *Id.* "In order to avoid dismissal, the petition must invoke 'substantive principles of law entitling plaintiff to relief and ultimate facts informing the defendant of that which plaintiff will attempt to establish at trial.'" *Coons v. Berry*, 304 S.W.3d 215, 217–18 (Mo.App. W.D.2009) (quoting *State ex rel Henley v. Bickel*, 285 S.W.3d 327, 329–30 (Mo. banc 2009)). "'In ruling on a motion to dismiss, the trial court can only consider the pleadings, and appellate review is also limited to the pleadings.'" *Atkins v. Jester*, 309 S.W.3d 418, 422 (Mo.App. S.D.2010) (quoting *L.C.*

*Dev. Co. v. Lincoln Cty.*, 26 S.W.3d 336, 339 (Mo.App. E.D.2000)). Since the trial court did not state its reasons for granting the motion to dismiss, we presume dismissal was based upon one of the grounds presented, and will affirm the dismissal if any ground can sustain the court's action. *Wenthe v. Willis Corroon Corp.*, 932 S.W.2d 791, 793–94 (Mo.App. E.D.1996).

### Point I: Failure to State a Cause of Action [4]

#### Analysis

■ Branson's contention under this point relied on is that it can demonstrate that the OTCs "control" hotel rooms such that section 67.662 does not preclude its claims and, in the alternative, that "the merchant model" of business applies in this case such that the statute does not impede the lawsuit from continuing. We disagree with both of these arguments in that under our standard of review on the grant of a motion to dismiss, it is our role only to determine whether " 'the facts alleged meet the elements of a recognized cause of action, or of a cause that might be adopted in that case.' " *City of O'Fallon,* 324 S.W.3d at 759 (quoting *Nazeri,* 860 S.W.2d at 306).

Here, Branson contends the OTCs are liable under section 67.662 because they "actually operate[ ]" hotels. Section 67.662 certainly provides that Branson's tourism tax would apply "solely to amounts actually received by *the operator of a hotel* " and that "[u]nder no circumstances shall a travel agent or intermediary be deemed an operator of a hotel . . . unless such travel agent or intermediary *actually operates such a facility.*" However, there is no definition of "operator" or "operate" found in this statute or in this portion of the code.[5] As such, "absent a statutory definition, the 'primary rule of statutory interpretation is to give effect to legislative intent as reflected in the plain language of the statute.' " *State ex rel. Office of Public Counsel and Missouri Indus. Energy Consumers v. Missouri Public Service Comm'n,* 331 S.W.3d 677, 688 (Mo.App. W.D.2011) (quoting *State ex rel. White Family P'ship v. Roldan,* 271 S.W.3d 569, 572 (Mo. banc 2008)). "Therefore, we look to the plain and ordinary meaning of such words as defined in the dictionary." *Id.* "Operate" is defined as "[t]o run or control the functioning of . . . [,]" and "operator" as "[t]he owner or director of a business or industrial concern." THE AMERICAN HERITAGE DICTIONARY OF THE ENGLISH LANGUAGE 920–21 (1975). "When used as a transitive verb, 'operate' means 'to put or keep working in operation,' *Random House Dictio-*

---

4. We note Branson's first point relied on contains the awkward assertion that "further discovery and prosecution of this case will allow . . ." the trial court to understand why its petition should not be dismissed. Branson presents this Court with no case law that would allow a party to avoid dismissal by simply asserting that it will prove in the future that its cause of action is appropriate. We further note that although this matter has apparently been pending for approximately five years, Branson has served few discovery requests upon the OTCs during that time. Such a consideration is not supported by case law and is irrelevant to any examination permitted under our standard of review. We shall, however, address the substantive nature of Point I and its allegation that Branson properly pled a cause of action in this matter.

5. For definitions of "operator" in other statutes not related to taxation, *see* § 407.985.4 which defines "operator" as "any individual proprietor or business entity responsible for the day-to-day operation of the convenience business"; § 444.765(13) which defines "operator" as "any person, firm or corporation engaged in and controlling a surface mining operation"; and § 411.026(27) which defines "operator" as "any person who owns, controls, operates or manages any warehouse . . . [.]"

*nary* (2011), 'to manage, direct, run, or pursue' and 'to control the functioning of,' *Collins English Dictionary* (10th ed.2009), or 'to put or keep in operation.' *Merriam–Webster Online Dictionary.*" *City of Goodlettsville, Tenn. v. Priceline.com, Inc.,* 844 F.Supp.2d 897, 912 (M.D.Tenn. 2012). In order to survive the OTCs' motion to dismiss, Branson was required to plead facts demonstrating that the OTCs operated hotel rooms or other accommodations within Branson's city limits. Yet, nowhere within its amended petition is there a single allegation that the OTCs were responsible for running or controlling the functioning of any such lodging space. In fact, Branson states in the amended petition that the OTCs are "online sellers" who "contract with hotels" for pre-negotiated rates on rooms within hotels, without mentioning the OTCs actually operated the hotels.[6]

■ We are further convinced Branson has failed to state a claim due to the holding of Missouri's Supreme Court in *Prestige Travel,* 344 S.W.3d at 708. In *Prestige Travel,* an ordinance nearly identical to the one here was found to be inapplicable to many of the OTCs herein based on the failure of the plaintiff to prove them to be operators. *Id.* The *Prestige Travel* court found the OTCs were not liable for the tax as they are not engaged in the business of operating a hotel or motel, they do not provide sleeping rooms, and the money they retain as compensa-

tion is for facilitating a reservation, not providing a room.[7] *Id.* at 714. The court further reasoned such a determination of non-liability was necessary in that the "taxing statutes must be construed strictly, and taxes are not to be assessed unless they are expressly authorized by law, this Court will not read a tax obligation into the law where one was not clearly expressed." *Id.* As an intermediate appellate court, this court is "bound to follow the latest decision of our Supreme Court on this issue." *Ferrellgas, L.P. v. Williamson,* 24 S.W.3d 171, 178 (Mo.App. W.D.2000), and we defer to its ruling.

■ Accordingly, even granting Branson's amended petition the liberal construction required by our standard of review, *Smith v. Missouri Local Government Employees Retirement System,* 235 S.W.3d 578, 580 (Mo.App. W.D. 2007), the amended petition does not allege facts demonstrating or asserting the OTCs "operate" or "actually operate" hotels or other accommodations. This failure necessarily precludes their tax liability under section 67.662, as well as the Code. Petitions are required to "identify the facts upon which the plaintiff's claim rests and present factual allegations in support of each essential element of the claim," *Allen v. City of Greenville, MO,* 336 S.W.3d 508, 511 (Mo.App. S.D.2011), and Branson has failed to comply with this pleading re-

---

6. Additionally, we find it noteworthy that while Branson argues on appeal that being an operator is necessary for tax liability under the ordinance, it is not lost on this Court that in its suggestions in opposition to the motion to dismiss, Branson essentially concedes the operation of a hotel is not a pre-requisite to liability under its tourism tax.

7. Other jurisdictions have ruled similarly to the court in *Prestige Travel.* *See Louisville/Jefferson Cty. Metro Gov't v. Hotels.com, LP,* 590 F.3d 381 (6th Cir.2009) (holding that OTCs are not operators as they do not physically control, furnish, supply, or provide the rooms they advertise and take no part in making these rooms physically available); *City of Findlay v. Hotels.com, LP,* 441 F.Supp.2d 855 (N.D.Ohio 2006) (holding that OTCs are not owners or operators of hotels); *Pitt Cty. v. Hotels.com, L.P.,* 553 F.3d 308, 309–15 (4th Cir.2009) (finding OTCs do not constitute "operators").

quirement. The trial court did not err in granting the OTCs' motion to dismiss because Branson failed to state a claim that the OTCs were operators under Missouri law.[8] Point I is denied.

### Point II: Reliance by Trial Court on Prestige Travel

#### Analysis

 Branson's second point relied on asserts trial court error based on the trial court's reliance on *Prestige Travel* due to the fact that "the constitutional arguments advanced by [the plaintiff in that case] are clearly different than the issues and arguments advanced by Branson in this case." This point fails for three reasons. First, it was not raised before the trial court such that it is being improperly raised for the first time on appeal. "An issue that was never presented to or decided by the trial court is not preserved for appellate review." *Roberson v. Weston,* 255 S.W.3d 15, 19 (Mo.App. S.D.2008) (internal quotation and citation omitted). Second, the judgment of the trial court was devoid of any reasoning for its decision, such that we can affirm the judgment for any reason stated in the motion to dismiss, *Wenthe,* 932 S.W.2d at 793–94, and we have done so in Point I above. Third, Branson's second point fails to comply with Rule 84.04(d)(1) [9] relating to the structure of a point relied on. *Metro. St. Louis Sewer Dist. v. Tomax Dev. Corp.,* 320 S.W.3d 189, 190 (Mo. App. E.D.2010). The trial court did not err in granting the OTCs' motion to dismiss. Point II is denied.[10]

---

8. Based on the statutory construction and case law set out above, this Court does not feel the need to more fully examine Branson's arguments relating to the differences in the "merchant model of business" and the "agency model of business."

9. All rule references are to Missouri Court Rules (2012).

The judgment of the trial court is affirmed.

GARY W. LYNCH, P.J., and NANCY STEFFEN RAHMEYER, J., concur.

---

10. We note Branson filed a "MOTION TO STRIKE [the OTCs'] BRIEF, OR IN THE ALTERNATIVE, TO STRIKE THE STATEMENT OF FACTS FROM [the OTCs'] BRIEF." This motion was taken with the case and is denied.