**FAMILY TREE FOUNDATION,**
Petitioner–Appellee,

v.

**PROPERTY TAX ADMINISTRATOR,**
Respondent–Appellant,

and

**Board of Assessment Appeals for the
State of Colorado, Appellee.**

No. 04CA0701.

Colorado Court of Appeals,
Division IV.

June 30, 2005.

Faegre & Benson, LLP, Karen L. Barsch, Marie E. Williams, Denver, Colorado, for Petitioner–Appellee.

John W. Suthers, Attorney General, Larry A. Williams, Assistant Attorney General, Denver, Colorado, for Respondent–Appellant.

John W. Suthers, Attorney General, John D. Baird, Assistant Attorney General, Denver, Colorado, for Appellee.

Opinion by: Judge STERNBERG. *

In this case involving the tax exempt status of real property, respondent, Property

---

* Sitting by assignment of the Chief Justice under provisions of Colo. Const. art. VI, § 5(3), and

§ 24–51–1105, C.R.S.2004.

Tax Administrator, appeals the order of the Board of Assessment Appeals (BAA) determining that the property owned by petitioner, Family Tree Foundation, is exempt from taxation. We affirm.

The following facts are undisputed. Family Tree is a 501(c)(3) nonprofit organization that provides transitional housing for homeless people and victims of domestic violence. Family Tree owns and operates a housing project consisting of multiple single family homes. Family Tree acquired the subject property in 1995 and filed for a tax exemption in that year, and the property has remained tax exempt until this issue arose in 2003 regarding the status of this property.

On August 23, 2003, the Administrator informed Family Tree that two of the five parcels in the project would be taxable because those properties were vacant on January 1, 2003, the statutory assessment date. Family Tree appealed that determination to the BAA.

Following a hearing, the BAA found that, although the properties were vacant on January 1, 2003, it was undisputed that the properties were subsequently occupied during the year by qualified residents and that the properties have been exclusively used for strictly charitable purposes. In addition, the Board found that using January 1 as the date for determining the exempt status of the property unduly penalized Family Tree and that the determination of tax exempt status should be based on the property's use for the entire year.

Accordingly, the Board reversed the Administrator's determination and ordered the Administrator to grant an exemption for the subject properties. This appeal followed.

The Administrator contends that the BAA erred as a matter of law in concluding that the subject properties were exempt from taxation for the tax year 2003. Specifically, it argues that because the two properties were not occupied on January 1, the properties do not qualify for tax exempt status under § 39–3–112(4), C.R.S.2004. We disagree.

Findings of fact of the BAA are entitled to deference unless they are unsupported by competent evidence or reflect a failure to abide by the statutory scheme for property tax assessment. *Bd. of Assessment Appeals v. E.E. Sonnenberg & Sons, Inc.,* 797 P.2d 27 (Colo.1990). However, a reviewing court is not bound by the BAA's interpretation of law where it is inconsistent with the clear language of the statute or legislative intent. *Douglas County Bd. of Equalization v. Clarke,* 921 P.2d 717 (Colo.1996); *see also El Paso County Bd. of Equalization v. Craddock,* 850 P.2d 702, 704–05 (Colo.1993).

When interpreting statutes, we adopt the statutory construction that best effectuates the legislative intent and design. *Bd. of County Comm'rs v. Park County Sportsmen's Ranch, LLP,* 45 P.3d 693, 711 (Colo.2002). To determine that intent, we look primarily to the language of the statute itself, and when the statutory language is plain, it must be applied as written and "should not be subjected to a strained or forced interpretation." *Boulder County Bd. of Equalization v. M.D.C. Constr. Co.,* 830 P.2d 975, 980 (Colo.1992). Each word and phrase must be given effect, using the commonly accepted meanings. *San Miguel County Bd. of Equalization v. Telluride Co.,* 947 P.2d 1381 (Colo.1997). In addition, the legislative declaration of policy behind the statute is often a good guide for determining the scope and intent. *People v. McKinney,* 99 P.3d 1038 (Colo.2004).

Property tax exemptions are determined on an annual basis under the property tax scheme, based on the use of the property in each tax year. *See* § 39–2–117(3), C.R.S. 2004. Implicit in this scheme is a requirement that, for that property to qualify for tax exemption for a tax year, there be at least some actual use of the property for tax exempt purposes in that tax year. *Pilgrim Rest Baptist Church, Inc. v. Prop. Tax Adm'r,* 971 P.2d 270 (Colo.App.1998).

Section 39–3–112(2), C.R.S.2004, provides a tax exemption for property used "solely and exclusively for strictly charitable purposes," if such property is owned and operated in accordance with § 39–3–112(3), C.R.S.2004. Section 39–3–112(3)(a)(II)(C) provides that a transitional housing facility is exempt from

taxation if it is: (1) owned and operated by a qualified 501(c)(3) tax exempt organization; and (2) occupied by individuals or families meeting specified income eligibility requirements.

While one requirement for exemption is that the property is "occupied" by income eligible individuals or families, the statute does not prescribe how or when the Administrator is to determine the occupancy of the structure.

The Administrator relies on § 39–3–112(4), C.R.S.2004, for its assertion that January 1 is the date for determining whether a property qualifies for the exemption. This subsection reads in pertinent part:

> In the event the occupants of the residential structure include both persons who are qualified ... and persons who are not qualified, the portion of such residential structure that is utilized by qualified occupants shall be deemed to be property used solely and exclusively for strictly charitable purposes ... and such portion ... shall be exempt pursuant to the provisions of subsection (2) of this section. The determination as to what portion of such structure is so utilized shall be made by the administrator on the basis of the facts existing on the annual assessment date for such property [January 1], and the administrator shall have the authority to determine a ratio which reflects the value of the nonexempt portion of such structure in relation to the total value of the whole structure ... which [equals] the ratio of the number of residential units occupied by nonqualified occupants to the total number of occupied residential units in such structure.

*See* § 39–1–105, C.R.S.2004 (providing that January 1 is the assessment date for real property).

The statute mandates that January 1 is the date for determining what percentage of a structure is occupied by qualified individuals or families. However, by its express language, this statute applies where the structure is occupied by both qualified and nonqualified residents. Here, the housing units in question do not fit that description because they were not occupied by either qualified or nonqualified residents on January 1.

Thus, we conclude that § 39–3–112(4) is inapplicable in determining whether Family Tree's property qualifies for an exemption.

Further, at the hearing, a witness for the Administrator testified that under § 39–3–112(4), apartment units having some vacancies on January 1 of a particular year are not treated as nonqualifying units. Rather, the Administrator does not count those units at all in calculating the percentage of units with qualified occupancy.

However, here, the Administrator would treat Family Tree's single family houses that are unoccupied on January 1 as nonqualifying units. Thus, the Administrator seeks to treat vacant single family housing units differently from apartment units. Because we perceive no rational basis for treating single family houses differently from apartment units when determining whether the property qualifies for an exemption, we reject the Administrator's use of § 39–3–112(4) to establish January 1 as the date for determining whether Family Tree's properties were occupied by qualified residents.

By definition, a transitional housing facility is intended to house transients, and individuals and families who utilize the facility are expected to move out and become self-sufficient. *See* § 39–3–112(1)(c), C.R.S.2004 (a "transitional housing facility" is a residential facility for single individuals or families, or both, who are homeless, who have resided within the past six months in a shelter for the homeless, or who have been abused, and whose incomes are within specified guidelines, and has as its purpose facilitating the achievement of independent living by such individuals and families). Thus, Family Tree's units are by their very nature meant to have periodic vacancies, and the Administrator's insistence on basing occupancy on one day, here January 1, to determine whether Family Tree's property qualifies for an exemption, ignores the reality of Family Tree's stated charitable purpose.

The Administrator next contends that its interpretation is supported by the language of § 39–1–105, which mandates that all taxable property be listed, appraised, and valued for assessment on January 1 of each year.

Assuming without deciding that § 39–1–105 applies to property which qualifies for a tax exemption, we nevertheless reject that contention.

Section 39–1–105 requires that all property in the state be valued as of January 1. However, that requirement does not mandate that January 1 is the date for determining the tax exempt status of property owned by a charitable organization. That statute deals with valuing property and assessing taxes. It does not address when the tax exempt status is to be determined. Thus, the Administrator's reliance on that statute is also misplaced.

Because it is undisputed that the property in question was occupied by qualified individuals for several months during 2003 and was never used for profit or gain, the BAA's decision to grant Family Tree an exemption is supported by competent evidence and must be affirmed. *See Bd. of Assessment Appeals v. AM/FM Int'l,* 940 P.2d 338 (Colo. 1997)(BAA's determination must be sustained if it has a reasonable basis in law and is supported by substantial evidence in the record as a whole).

The order is affirmed.

Judge LOEB and Judge RUSSEL concur.