2014 COA 87

EXPEDIA, INC.; Hotels.com, L.P.; Hotwire, Inc.; Orbitz, LLC; Trip Network, Inc., d/b/a Cheaptickets.com; Priceline.com, Inc.; Travelwebb LLC; Travelocity.com L.P.; and Site59.com, LLC, **Plaintiffs-Appellants and Cross-Appellees,**

v.

CITY AND COUNTY OF DENVER, Colorado; Cary Kennedy, in her official capacity as the Manager of Finance of the City and County of Denver; and Bill Speckman, in his official capacity as Hearing Officer designated by the Manager of Finance, **Defendants-Appellees and Cross-Appellants.**

**Court of Appeals No. 13CA0779**

Colorado Court of Appeals,
Div. I.

Announced July 3, 2014

Reilly Pozner, LLP, Dan M. Reilly, Sean Connelly, Jason M. Lynch, Denver, Colorado; Jones Day, Deborah Sloan, Dallas, Texas, for Plaintiffs-Appellants and Cross-Appellees

Lewis Roca Rothgerber, LLP, Michael D. Plachy, Thomas M. Rogers III, Denver, Colorado; Hagens Berman Sobol Shapiro, LLP, Andrew M. Volk, Christopher A. O'Hara, Seattle, Washington, for Defendants-Appellees and Cross-Appellants

Opinion by JUDGE NAVARRO

¶1 Online travel companies (OTCs) maintain websites through which travelers may book reservations for hotel accommodations and other travel-related services. When booking a hotel room through an OTC, a traveler pays a total price that includes the rate charged by the hotel to the OTC. The total price also includes the OTC's markup and service fees (collectively, fees). It is undisputed that the Lodger's Tax imposed by the City and County of Denver applies to the room rate charged by the hotel. The question presented here is whether that tax also applies to an OTC's fees.

¶2 We conclude that the Lodger's Tax ordinance does not unambiguously include the OTC's fees within its designated tax base. Strictly construing this taxing provision against the government, we therefore hold that the tax does not apply to such fees. We reverse the district court's judgment to the extent that it upheld the administrative hearing officer's order assessing the Lodger's Tax against the plaintiff OTCs.[1] We remand with directions to vacate all of the tax assessments against the OTCs.

---

1. The plaintiffs are Expedia, Inc.; Hotels.com, L.P.; Hotwire, Inc.; Orbitz, LLC; Trip Network, Inc., d/b/a Cheaptickets.com; Priceline.com; Travelwebb LLC; Travelocity.com, L.P.; and Site59.com, LLC. The defendants are the City and County of Denver; Cary Kennedy, in her official capacity as Manager of Finance for the City and County of Denver; and Bill Speckman, in his official capacity as Hearing Officer as designated by the City's Manager of Finance.

## I. Background

¶ 3 This case represents one of many efforts nationwide to determine whether OTCs must collect and remit municipal taxes that apply to hotel accommodations. *See* James A. Amdur, Annotation, *Obligation of Online Travel Companies to Collect and Remit Hotel Occupancy Taxes,* 61 A.L.R.6th 387 (2011). "Although the claims are similar, the outcome of each case depends on the evidence introduced and the language of the taxing provision at issue." *City of Houston v. Hotels.com, L.P.,* 357 S.W.3d 706, 707 (Tex.App.2011).

¶ 4 The City and County of Denver (the City) imposes a Lodger's Tax of 10.75% on the purchase price for "lodging." Denver Rev. Mun.Code § 53–171(b). Lodging includes overnight accommodations, furnished for consideration, in a hotel or similar establishment. *Id.* at § 53–170(2). The tax must be collected from travelers and remitted to the City by "vendors." *Id.* at § 53–167(b). The City contends that the OTCs are vendors that must collect and remit the Lodger's Tax on the fees they charge their customers, in addition to the tax on the room rate charged by the hotel.[2]

¶ 5 The OTCs provide websites and related services that enable their customers to make travel arrangements, including hotel reservations, online. The OTCs' websites allow travelers to research and compare available accommodations by price, location, available amenities, and nearby attractions. The websites also permit customers to book flights and reserve rental cars, and to do so in combination with hotel reservations in customized package deals.

¶ 6 As relevant here, the OTCs use a "merchant model" for facilitating reservations at hotels. While the parties often use different terminology to describe the model, its basic factual premises are not in dispute. We describe it below. *See also City of Houston,* 357 S.W.3d at 708–10 (describing the merchant model in additional detail).

## A. The Merchant Model

¶ 7 The OTCs have entered into contracts with Denver hotels. Under such a contract, the hotel offers rooms to the OTC at a discounted rate that is a fixed percentage of the price the hotel would charge travelers directly for the rooms (which price is subject to change by the hotel). The OTCs facilitate the booking of reservations for the hotel on behalf of OTC customers. The contracts define the discounted rates under which the OTCs may book reservations for a particular hotel and the terms under which the hotel will make rooms available to the travelers who use the OTCs' websites to make reservations. The contracts specify that they are not rental or sales agreements for certain hotel rooms or blocks of rooms, but rather are agreements that the OTCs will facilitate the booking of hotel room reservations. Generally, the hotel is not obligated to accept any particular number of reservations from the OTC, and the OTC has neither the right nor the obligation to make a particular number of reservations at a given hotel.

¶ 8 The OTCs advertise the rooms on their websites for reservation by customers. When a customer requests a hotel reservation via an OTC's website, the customer is quoted a room price that combines the discounted room rate charged by the hotel with the OTC's fees (or markup) for that room. The OTC charges an additional lump sum typically designated as "taxes and fees." But the OTC calculates the Lodger's Tax due based solely on the discounted room rate charged by the hotel, excluding the additional fees collected from the traveler and retained by the OTC as compensation for its services. The OTC does not disclose to its customer the discounted rate the OTC pays the hotel, the amount representing the OTC's fees, or the portion of the final price attributable to the Lodger's Tax.

¶ 9 Before finalizing its transaction with the customer, the OTC obtains confirmation from the hotel that a room is available. If so, the hotel accepts a reservation in the customer's name and supplies the OTC with

---

2. As the City explains on appeal, there is "no functional difference" between the "markup" and the "service fees" that the OTCs charge their customers. Thus, as previously noted, when we use the term "fees," we refer to both charges unless otherwise indicated.

a confirmation number. The OTC then charges the customer's credit card and passes on the hotel's confirmation number to the customer.

¶ 10 When the customer arrives at the hotel, he or she must check in with the hotel's personnel and provide the hotel with security for any incidental charges incurred during the stay. The hotel is responsible for providing an appropriate room, as well as for maintaining the hotel and any amenities it provides. Even if a room is guaranteed, the hotel is not required to provide the customer with one of its rooms. But, if the hotel does not do so, it must secure comparable accommodations for the customer at no additional cost.

¶ 11 Later, the hotel invoices the OTC for the contractual room rate and the Lodger's Tax on that discounted rate, generally after the customer has checked out. The hotel assumes responsibility for remitting the collected Lodger's Tax to the City.

¶ 12 The hearing officer in this case illustrated these points, and the parties' dispute, in the following example. An OTC charges its customer a room rate of $200, even though the hotel will invoice the OTC for a discounted room rate of only $160. The $40 difference represents the OTC's fees, including markup. The OTC also collects Lodger's Tax of $17.20 (10.75% of $160) from its customer and pays that to the hotel for remittance to the City. The City contends that the OTC must collect and remit Lodger's Tax of $21.50 (10.75% of $200). Hence, under the City's view, the Lodger's Tax applies to the OTC's fees paid by its customer.

¶ 13 The phrase "merchant model" refers to the facts that the OTC, not the hotel, sets the price paid by its customer (within contractual limits) and is the merchant of record for the customer's credit card transaction. To recap, the customer's credit card payment includes three consolidated components: (1) the discounted room rate set by the hotel for reservations made through the OTC; (2) the Lodger's Tax amount, calculated as a percentage of the discounted room rate only; and (3) the fees retained by the OTC.

### B. Procedural History

¶ 14 For decades, the City collected the Lodger's Tax only from hotels and other businesses that physically operate lodging establishments in Denver. Before the assessments at issue here, the City had never sought to collect the Lodger's Tax from travel agents, wholesalers, tour operators, or other entities that facilitate reservations at Denver hotels.

¶ 15 The City began investigating the OTCs' obligations under the Lodger's Tax ordinance as early as 2003, when it requested information from some of the OTCs about their relationships with hotels and their use of the merchant model. In 2006, another OTC attempted to determine the City's position on whether OTCs using the merchant model were subject to the Lodger's Tax. The City began an audit but then stopped without completing the audit or issuing an assessment.

¶ 16 The City took no further action against the OTCs for years. Then, in 2010—without any additional audits or communications with the OTCs—the City issued the assessments at issue here.

#### 1. The Tax Assessments

¶ 17 The City's manager of finance issued Lodger's Tax assessments to the OTCs covering the period from 2001 through April 2010. See Denver Rev. Mun.Code § 53–187 (authorizing the manager of finance to issue assessments for unpaid taxes). The assessments—which totaled $40 million—included Lodger's Taxes on the amounts the City estimated that the OTCs had retained as fees, as well as penalties and interest.

#### 2. Administrative Hearing

¶ 18 Each OTC protested its assessment and requested a hearing. See id. at § 53–188. A hearing officer appointed by the manager of finance held a joint hearing. The parties stipulated that, if the OTCs were liable for the Lodger's Tax on their fees since 2001, they owed $4,652,522 in back taxes, not including penalties and interest.

¶ 19 In his final decision, the hearing officer found that the OTCs were liable for the

tax since 2001 and that they owed interest and a 15% nonpayment penalty on the past-due amounts. But the hearing officer declined to impose a 50% fraud penalty. *See id.* at §§ 53–184(a), 53–185, 53–187(a). The hearing officer awarded the City a total of $8,176,648.

### 3. District Court Proceedings

¶ 20 The OTCs sought review of the hearing officer's determination in the district court pursuant to C.R.C.P. 106(a)(4). *See also* Denver Rev. Mun.Code § 53–194(a). The district court affirmed the hearing officer's finding that the OTCs were liable for the Lodger's Tax, penalties, and interest. But the court also concluded that the hearing officer had erred by not applying the ordinance's three-year limitations period relevant to tax assessments. *See id.* at § 53–206(a). Thus, the court vacated the assessments to the extent that they pertained to taxes payable more than three years before the date of the assessments, and entered judgment in favor of the City in the amount of $3,564,791.

¶ 21 The OTCs appeal the portion of the district court's order holding them liable for that amount. The City cross-appeals the portion of the court's order applying the statute of limitations to reduce the OTCs' liability.

### II. Standard of Review

¶ 22 C.R.C.P. 106(a)(4) provides for judicial review of agency action "[w]here any governmental body or officer or any lower judicial body exercising judicial or quasi-judicial functions has exceeded its jurisdiction or abused its discretion, and there is no plain, speedy and adequate remedy otherwise provided by law." In conducting our review, we stand in the shoes of the district court and review the agency's action. *Giuliani v. Jefferson Cnty. Bd. of Cnty. Comm'rs,* 2012 COA 190, ¶ 38, 303 P.3d 131.

¶ 23 Judicial review is strictly limited to whether the administrative body or officer has exceeded its jurisdiction or abused its discretion, based on evidence in the administrative record. C.R.C. P. 106(a)(4)(I); *Stevinson Imports, Inc. v. City & Cnty. of Denver,* 143 P.3d 1099, 1101 (Colo.App.2006). An agency abuses its discretion when it misconstrues or misapplies the applicable law. *See Freedom Colo. Info., Inc. v. El Paso Cnty. Sheriff's Dep't,* 196 P.3d 892, 899 (Colo.2008); *Treece, Alfrey, Musat & Bosworth, P.C. v. Dep't of Fin.,* 298 P.3d 993, 996 (Colo.App. 2011).

¶ 24 Interpretation of a municipal ordinance involves a question of law that we review de novo. *MDC Holdings, Inc. v. Town of Parker,* 223 P.3d 710, 717 (Colo. 2010).

### III. Interpretation of Municipal Ordinances

¶ 25 When reviewing a municipal ordinance, we apply the same principles applicable to interpreting statutes. *McCarville v. City of Colo. Springs,* 2013 COA 169, ¶ 15, 338 P.3d 1033; *Treece,* 298 P.3d at 996. Our primary task is to ascertain and give effect to the intent of the legislative body that drafted the ordinance, and we do so by beginning with the plain language used. *McCarville,* ¶ 15; *Treece,* 298 P.3d at 996 (citing *Waste Mgmt. of Colo., Inc. v. City of Commerce City,* 250 P.3d 722, 725 (Colo.App.2010)).

¶ 26 We attempt to give effect to every word of the ordinance and to harmonize potentially conflicting provisions if possible. *See Treece,* 298 P.3d at 996; *Kisselman v. Am. Family Mut. Ins. Co.,* 292 P.3d 964, 969 (Colo.App.2011). Further, when the city council defines a term, that definition prevails over the ordinary meaning of the term. *See Mountain–Plains Inv. Corp. v. Parker Jordan Metro. Dist.,* 2013 COA 123, ¶ 15, 312 P.3d 260. If the ordinance is clear and unambiguous on its face, our analysis is complete, and we simply apply that unambiguous meaning. *See People v. Dinkel,* 2013 COA 19, ¶ 7, 321 P.3d 569. Where the language of an ordinance is ambiguous, however, we may consider other aids to interpretation. *See Bostelman v. People,* 162 P.3d 686, 690 (Colo. 2007).

¶ 27 An ordinance is ambiguous if its language lends itself to more than one reasonable alternative construction and its intended scope is unclear. *See People v. Terry,* 791 P.2d 374, 376 (Colo.1990); *see also Jefferson*

*Cnty. Bd. of Equalization v. Gerganoff,* 241 P.3d 932, 935 (Colo.2010) ("A statute is ambiguous when it 'is capable of being understood by reasonably well-informed persons in two or more different senses.'" (quoting 2A Norman J. Singer & J.D. Shambie Singer, *Sutherland Statutes & Statutory Construction* § 45:2, at 13 (7th ed. 2007) (*Sutherland*))); *State v. Nieto,* 993 P.2d 493, 501 (Colo.2000) (Ambiguity exists when "the words chosen do not inexorably lead to a single result.").

¶ 28 In construing an ambiguous ordinance, we may consult various interpretive aids. Most relevant to this case is the "longstanding rule of construction in Colorado" holding that tax provisions will not be extended beyond the clear import of the language used, nor will their operation be extended by analogy. *Treece,* 298 P.3d at 996 (citing *City of Boulder v. Leanin' Tree, Inc.,* 72 P.3d 361, 367 (Colo.2003)). We resolve all doubts against the government and in favor of the taxpayer. *Id.; see City & Cnty. of Denver v. Sweet,* 138 Colo. 41, 52, 329 P.2d 441, 447 (1958). Strict application of tax measures has been called a "fundamental precept" that "protects citizens by informing them in unambiguous terms about the amount and nature of their duty to pay taxes." 3A *Sutherland* § 66:1, at 9–10.

¶ 29 Other potentially useful interpretive aids include legislative history, prior law, the consequences of a given construction, and the goal of the statutory scheme. *See Bd. of Cnty. Comm'rs v. Costilla Cnty. Conservancy Dist.,* 88 P.3d 1188, 1193 (Colo.2004). An agency's view is also relevant, but its construction is advisory, not binding. *See Telluride Resort & Spa, L.P. v. Colo. Dep't of Revenue,* 40 P.3d 1260, 1264 (Colo.2002). Although the interpretation of an ordinance by the agency charged with its enforcement is entitled to deference, we do not defer to an agency decision that misconstrues or misapplies the law. *See Stevinson Imports,* 143 P.3d at 1101. And an agency's construction does not deserve deference when it has not been uniform. *Three Bells Ranch Assocs. v. Cache La Poudre Water Users Ass'n,* 758 P.2d 164, 172 (Colo.1988).

## IV. The Lodger's Tax does not apply to the OTCs' fees.

¶ 30 The OTCs contend that the City's Lodger's Tax does not apply to the fees they charge their customers for facilitating hotel reservations. We agree with the OTCs for two related reasons: (1) the OTCs are not vendors within the meaning of the ordinance because they do not furnish lodging and (2) their fees are not included within the purchase price for lodging under the ordinance because the fees are not directly connected with the furnishing of lodging. Accordingly, neither the OTCs nor their customers are liable for the Lodger's Tax on amounts representing the OTCs' fees.

### A. Are the OTCs vendors under the ordinance?

¶ 31 It is uncontested that the Lodger's Tax ordinance requires only "vendors" to collect and remit the tax. *See* Denver Rev. Mun.Code §§ 53–173(a) ("Every vendor making sales to a purchaser in the city ... at the time of making such sales is required to collect the tax ... from the purchaser."), 53–173(b) ("The tax shall be paid by the purchaser to the vendor, as trustee for and on account of the city, and the vendor shall be liable for the collection thereof and on account of the city."), 53–174(b) (vendors must file monthly returns and remit collected taxes).

### 1. What is a vendor?

¶ 32 The ordinance defines a "vendor" as "a person making sales of or furnishing lodging to a purchaser in the city." *Id.* at § 53–170(8). Although "furnishing" is not defined, "sale" is defined. The ordinance describes "sale" using a compound definition: "Purchase or sale means the acquisition or furnishing for consideration by any person of lodging within the city." *Id.* at § 53–170(4). As both parties appear to acknowledge, the only reasonable way to understand this definition is to break it down into its two parts: "purchase" means the acquisition of lodging for consideration, and "sale" means the furnishing of lodging for consideration.

¶ 33 Because the ordinance defines a "sale" as furnishing lodging, the OTCs contend that, under the plain language of the ordinance, a vendor can only be one who furnishes lodging (i.e., "making sales of" is synonymous with "furnishing"). The OTCs' interpretation of the definition of vendor gives effect to the definition of "sale" provided by the ordinance. *See Mountain–Plains*, ¶ 15 ("[W]here a term is defined by a statute, the statutory definition governs."); 2A *Sutherland* § 47:7, at 298–99 ("As a rule, a definition which declares what a term means is binding upon the court.").

¶ 34 The City contends, however, that "vendor" includes one who either sells *or* furnishes lodging, which the City maintains are different activities. In essence, the City views "making sales of" lodging as synonymous with "selling" lodging. Ordinarily, this interpretation would make sense because, under their common meaning, these terms denote the same thing. As explained, however, "sale" has been defined by the drafters of the Lodger's Tax ordinance in a way that does not comport with its common meaning. *See People v. Boles*, 280 P.3d 55, 63 (Colo.App. 2011) (The legislative body may create "its own definitions of words to guide and direct judicial determination of the intended purpose of the legislation, although such definitions may differ from ordinary usage."). Under the definition provided in the ordinance, "sale" means furnishing lodging. The City does not explain how its interpretation of "making sales" comports with the ordinance's definition of "sale."

¶ 35 Rather, the City relies on the interpretive rule requiring courts to give effect to every word of an ordinance. *See Family Tree Found. v. Prop. Tax Adm'r*, 119 P.3d 581, 582 (Colo.App.2005) ("Each word and phrase must be given effect, using the commonly accepted meanings."). Because the city council defined "vendor" using both the phrase "making sales of" and the word "furnishing," the City contends that each must mean something different. But accepting the City's interpretation would require us to

ignore the meaning of "sale" provided by the ordinance and instead to substitute its common meaning.[3]

¶ 36 Conversely, we can give effect to the ordinance's definition of sale *and* give effect to every word in the definition of vendor by recognizing that, in the phrase "making sales of or furnishing lodging," the term "or" is not used disjunctively. We give effect to every word in the definition of vendor by interpreting "or" to join two like concepts—two activities (making sales of lodging, and furnishing lodging) that refer to the same thing. *See People v. Swain*, 959 P.2d 426, 430 n. 12 (Colo.1998) ("Generally, the word or is a disjunctive particle that denotes an alternative; however, the word or may also be utilized as a coordinate conjunction introducing a synonymous word or phrase or it may join different terms expressing the same idea or thing. . . ." (internal quotation marks omitted)).

¶ 37 In sum, the City's interpretation would require us to disregard the ordinance's definition of "sale," whereas the OTCs' interpretation harmonizes and gives effect to all the language of the ordinance. Accordingly, we are persuaded by the OTCs' view of the definition of vendor. *See Kisselman*, 292 P.3d at 969 (Courts should "reject interpretations that render words or phrases superfluous, and harmonize potentially conflicting provisions, if possible.").

¶ 38 The plain meaning of "vendor" under the ordinance, as informed by the special definition of "sale," refers only to one who actually furnishes lodging. To the extent the hearing officer concluded otherwise, he abused his discretion. We now turn to the question whether the OTCs furnish lodging.

## 2. Do the OTCs furnish lodging?

¶ 39 Because "furnish" is not defined by the ordinance, we look to its usual and ordinary meaning. *See OPEX Commc'ns, Inc. v. Prop. Tax Adm'r*, 166 P.3d 225, 227 (Colo. App.2007). The ordinary meaning of "furnish" is "to equip; to provide or supply with

---

**3.** The City ultimately conceded at oral argument that, if "sale" means furnishing lodging, then "making sales" must mean furnishing lodging.

something that is necessary, useful, or desired." *Broadmoor Hotel, Inc. v. Dep't of Revenue*, 773 P.2d 627, 629 (Colo.App.1989) (citing Webster's Third New Int'l Dictionary 923); *cf. Waggoner v. Wilson*, 31 Colo.App. 518, 524, 507 P.2d 482, 485 (1972) (construing the term "furnish" to refer to items that are actually used, and not merely made available for use).

¶ 40 The OTCs contend that they are not vendors because they neither equip, provide, nor supply travelers with hotel rooms or the right to use such rooms. Instead, the OTCs claim that they merely serve as intermediaries in facilitating hotel reservations between travelers and hotels. The OTCs argue that, rather than furnishing lodging, they maintain websites populated with information and functions that allow travelers to plan vacations, locate hotels, comparison shop, and other similar activities. According to the OTCs, only a hotel (or similar establishment) furnishes lodging, and it does so when a traveler checks in and the hotel provides access to a specific room.

¶ 41 In contrast, the City relies almost exclusively on the notion that one need not furnish lodging in order to qualify as a vendor—a position we have now rejected. In somewhat conclusory fashion, the City also contends that the OTCs furnish lodging because they provide or supply "the right to use overnight accommodations." *See also* Denver Rev. Mun.Code § 53–170(2) ("[L]odging" means "rooms or accommodations for overnight use furnished . . . to any person who for consideration uses, possesses, occupies or has the right to use, possess or occupy any such room or accommodation.").[4]

¶ 42 As discussed below, we conclude that the OTCs have articulated a reasonable interpretation of the ordinance, thereby demonstrating (at the very least) the ordinance's ambiguity as to whether it classifies the OTCs as vendors.

¶ 43 Initially, we observe that the City's uneven enforcement history with respect to the OTCs in this case suggests that the OTCs' interpretation of the ordinance has a reasonable basis. *See Vill. of Rosemont, Illinois v. Priceline.com Inc.*, No. 09 C 4438, 2011 WL 4913262, at *4 (N.D.Ill. Oct. 14, 2011) (recognizing that courts may consider the government's enforcement history as an aid in construing a statute). The fact that the City acted in fits and starts, and ultimately waited several years to issue the assessments, tends to show that even the City was not certain that the OTCs were vendors under the ordinance.

¶ 44 And, in tension with its current view that the OTCs furnish lodging, the City has never required the OTCs to obtain a "lodger's license." The City's code requires those who furnish lodging to obtain a "lodger's license" for "each location of business." Denver Rev. Mun.Code § 53–216. Similarly, Denver's Tax Guide Topic No. 47 (an advisory guide for the public) explains that "[a] lodger's tax license is required for any vendor who provides lodging or accommodations in the City and County of Denver."

¶ 45 Yet the City argued to both the hearing officer and the district court that this licensing requirement did not apply to the OTCs, and that the "only" licensing requirement that applied to them was code section 32–107, relating to retail sales and occupational tax registration.[5] In this court, the City suggests merely that the OTCs must comply with "applicable" licensing requirements, but the City does not specifically contend that the requirement of a lodger's license applies to the OTCs. The City's apparent concession that the OTCs need not obtain lodger's licenses undermines its position that the OTCs

---

4. Because the definition of lodging itself uses the term furnish, that definition is not especially helpful in understanding what it means to *furnish* lodging. *Cf. Pub. Serv. Co. v. Dep't of Revenue*, 397 P.3d 1111, 1117, 2011 WL 4089971 (Colo.App. No. 10CA1026, Sept. 11, 2011) ("When a definition uses the term being defined, or a synonym, as the definition it is circular and provides little guidance."), *rev'd on other grounds*, 2014 CO 59, 330 P.3d 385.

5. For example, in a written declaration submitted to the hearing officer, the City's acting treasurer responded to the OTCs' concern that they would need to obtain a lodger's license for every hotel with which they did business. The acting treasurer disputed that claim and declared instead that "the only Denver tax licensing requirement that would apply to the [OTCs] is that found in [Den. Rev. Mun.Code] § 32–107."

furnish lodging. *Cf. Three Bells Ranch*, 758 P.2d at 172 (no deference is due to an agency whose interpretation has not been uniform).

¶ 46 In addition, several appellate court decisions considering language similar to that used in the City's ordinance support the OTCs' view that they do not furnish hotel rooms. *See City of Columbus, Ohio v. Hotels.com, L.P.*, 693 F.3d 642, 648–49 (6th Cir. 2012) (concluding that OTCs are not "vendors" who "furnish lodging" because they do not perform functions associated with owning and operating a hotel, such as "maintaining rooms, employing hotel staff, providing keys, or performing other similar activities"); *Louisville/Jefferson Cnty. Metro Gov't v. Hotels.com, L.P.*, 590 F.3d 381, 387 (6th Cir. 2009) (OTCs "do not ... furnish the rooms they advertise."); *City of Birmingham v. Orbitz, LLC*, 93 So.3d 932, 935 (Ala.2012) (affirming the trial court's determination that the OTCs "are not engaged in the business of ... furnishing hotel rooms" because only hotel operators furnish rooms); *Travelscape, LLC v. S.C. Dep't of Revenue*, 391 S.C. 89, 705 S.E.2d 28, 34 (2011) (concluding, despite upholding an OTC tax assessment, that "furnish" commonly means "to physically provide sleeping accommodations," and that an OTC "does not physically provide accommodations"); *cf. Pitt Cnty. v. Hotels.com, L.P.*, 553 F.3d 308, 313 (4th Cir.2009) ("A business that arranges for the rental of hotel rooms over the internet, but that does not physically provide the rooms, is not a business that is of a similar type to a hotel...."); *St. Louis Cnty. v. Prestige Travel, Inc.*, 344 S.W.3d 708, 714 (Mo.2011) (An OTC "does not provide sleeping rooms.").[6]

¶ 47 We thus agree with the OTCs that a tax applicable only to vendors who furnish lodging can be reasonably understood to apply only to hotels and similar establishments, but not to the OTCs. Stated differently, the ordinance is at least ambiguous as to whether it classifies the OTCs as vendors. *See People in Interest of O.C.*, 2013 CO 56, ¶ 13, 308 P.3d 1218 ("When the words chosen by the legislature are unclear because they are susceptible to multiple reasonable, alternative interpretations, the statute is ambiguous."). As a result, we turn to the rules of construction to resolve the ambiguity.

¶ 48 We note at the outset that the City relies entirely on its view that the plain language of the ordinance unambiguously applies the Lodger's Tax to the OTCs' fees. The City does not contend that we should construe the tax to apply to the OTCs' fees if we conclude that the ordinance is ambiguous on this question, and it points to no interpretative aids that may resolve any such ambiguity.

¶ 49 Where, as here, a taxing provision is at issue, we must apply the fundamental precept that any doubts about the reach of the provision must be resolved in favor of the taxpayer and against the government. *See, e.g., Leanin' Tree*, 72 P.3d at 367; *Treece*, 298 P.3d at 996; *see also Phila. Storage Battery Co. v. Lederer*, 21 F.2d 320, 321 (E.D.Pa.1927) ("Tax laws, like all other laws, are made to be obeyed. They should therefore be intelligible to those who are expected to obey them."). Because the ordinance does not unambiguously classify the OTCs as vendors, we conclude that the OTCs are not vendors under the ordinance. *See Transponder Corp. v. Property Tax Adm'r*, 681 P.2d 499, 504 (Colo.1984) (Where "at least some doubt exists as to whether [the taxpayer] is a telephone company within the meaning of the statute[,]" the doubt is resolved in the taxpayer's favor.).

¶ 50 Furthermore, although the preceding analysis is dispositive of the issue, we also observe that other interpretive aids do not suggest a different construction of the ordinance. For instance, the city council's professed intent in enacting the Lodger's Tax ordinance does not clarify whether the OTCs "furnish" lodging. The statement of legislative intent contained within the ordinance incorporates the same ambiguous terms used in the rest of the ordinance: "every vendor who shall make a sale of lodging to a pur-

---

6. There are contrary decisions concluding that OTCs furnish or provide hotel rooms. *See, e.g., City of Charleston, South Carolina v. Hotels.com, LP*, 520 F.Supp.2d 757 (D.S.C.2007). But we find more relevant the many appellate decisions ruling in favor of the OTCs because our inquiry is whether the OTCs' view that they do not furnish lodging is reasonable.

chaser in the city shall collect the tax imposed by this article to the total purchase price charged for such lodging furnished at any one ... time by or to every customer or buyer." Denver Rev. Mun.Code § 53–167(b). Thus, the council's statement of legislative intent sheds no light on the meaning of "furnishing" lodging in a way that helps to resolve the ambiguity as to whether the OTCs are vendors.

¶ 51 Legislative history is not likely to aid in construing the city council's intent concerning whether OTCs are vendors that furnish lodging. The Lodger's Tax ordinance was enacted in 1950 – long before the OTCs existed. Thus, the parties do not cite legislative history, and we do not anticipate that any legislative history that may exist would assist us in determining whether the drafters of the ordinance intended to include within the meaning of "furnishing" lodging such activities as the OTCs engage in while carrying out the merchant model for facilitating hotel reservations.

◼ ¶ 52 The City does not ask us to defer to the hearing officer's interpretation—presumably because his analysis is of little help to it. The hearing officer concluded that, "technically," the OTCs do not furnish lodging to anyone. But the hearing officer determined that the OTCs should nonetheless be deemed vendors under an elaborate "representational nexus" theory pursuant to which the hotels (who actually furnish lodging) are allegedly the agents of the OTCs due to their contractual relationships (i.e., due to an OTC's "shared business interests with the local hotel 'vendor' ").[7] Because the City has abandoned the hearing officer's analysis on appeal, we do not to defer to that analysis. See, e.g., Treece, 298 P.3d at 996.

¶ 53 Accordingly, we conclude that the ordinance is at least ambiguous on the question whether the OTCs furnish lodging and, thus, at least ambiguous as to whether the OTCs are vendors. Strictly construing this taxing

provision in favor of the OTCs, we hold that that they are not vendors under the ordinance.

**B. Are the OTCs' fees directly connected with the furnishing of lodging?**

¶ 54 The Lodger's Tax applies to "the purchase price paid or charged for purchasing such lodging." Denver Rev. Mun.Code § 53–171(b). "The purchase price paid or charged for lodging shall *exclude* the price paid by the purchaser for any goods, *services* or commodities *other than those directly connected with,* and included in the price of, the furnishing of rooms or accommodations." *Id.* at § 53–171(c) (emphasis added).

◼ ¶ 55 The OTCs contend that their fees are not directly connected with furnishing lodging because they are compensated only for providing travel-related information and online facilitation services. The City argues that, because the OTCs' customers cannot obtain lodging through the OTCs without paying the fees, those fees are directly connected with furnishing lodging. As a result, the City maintains, the OTCs' fees are a part of the taxable purchase price for lodging.

¶ 56 The plain language of the ordinance does not clearly resolve the parties' dispute. Because we have decided that it is reasonable to conclude that the OTCs do not furnish lodging, it would also be reasonable to conclude that the OTCs' fees are not *directly* connected with furnishing lodging. At most, those fees represent compensation for services indirectly connected with that activity.

¶ 57 The OTCs' view thus enjoys support in the text of the ordinance (i.e., the "purchase price" for lodging "shall exclude" the price paid for any "services" not "directly connected with" the furnishing of lodging). *See* Denver Rev. Mun.Code § 53–171(c).

¶ 58 In addition, the OTCs' interpretation finds support in the decisions of appellate courts around the nation, which hold that the

---

7. The hearing officer tended to conflate his interpretation of the Lodger's Tax ordinance with his consideration of whether the tax violates the Commerce Clause, even though the OTCs did not ask him to resolve this constitutional issue. The hearing officer apparently borrowed the "nexus"

terminology from Commerce Clause jurisprudence. The hearing officer, however, had no authority to determine the constitutionality of the ordinance. *See Arapahoe Roofing & Sheet Metal, Inc. v. City & Cnty. of Denver,* 831 P.2d 451, 454 (Colo.1992).

OTCs' fees are compensation for services other than furnishing lodging or providing hotel rooms. *See, e.g., Alachua Cnty. v. Expedia, Inc.,* 110 So.3d 941, 946 (Fla.Dist.Ct.App.2013) *(review granted* Sept. 10, 2013) (concluding that the OTCs' fees are not subject to taxation because "the difference between the fees they charge their customers, and what the hotels require be paid to place a customer in a room, is not 'solely for the use or possession' of the hotel room" but rather "for advertising hotel facilities, setting up internet websites, and forwarding and assisting in the making of reservations on behalf of hotel customers"); *City of Branson v. Hotels.com, LP,* 396 S.W.3d 378, 384 (Mo. Ct.App.2013) (OTCs "do not provide sleeping rooms, and the money they retain as compensation is for facilitating a reservation, not providing a room." (citing *St. Louis Cnty.,* 344 S.W.3d at 714)); *City of Houston,* 357 S.W.3d at 715 (customers' payments to the OTC include compensation for the benefits the OTC provides in helping customers to "make informed choices in spending their travel dollars, and to do so conveniently and efficiently"); *cf. S.C. Dep't of Revenue,* 705 S.E.2d at 33 (OTCs' fees may be taxable under a statute that did not exclude the cost of services, whether directly or indirectly connected with lodging).[8]

¶ 59 Conversely, we discern some potential flaws in the City's argument. As the OTCs explain in response to the City's claim that travelers cannot obtain lodging without paying an OTC's fees, a traveler could avoid those fees altogether simply by making the same reservation directly with the hotel. In addition, when a traveler books a package deal with an OTC that allows the traveler to obtain a hotel reservation only when simultaneously reserving other travel-related services (such as airfare and car rental), the traveler cannot obtain the hotel reservation without also paying the other travel-related charges. Yet, the City does not maintain that such other charges are directly connected with furnishing lodging.

¶ 60 Ultimately, however, we need not decide whether the City has offered a reasonable interpretation of the ordinance because we conclude that the OTCs' view is reasonable in either event. *See City of Houston,* 357 S.W.3d at 715 (declining to consider whether Houston's interpretation of a taxing ordinance was also reasonable because, even if so, the ordinance would be ambiguous and would be strictly construed in favor of the OTCs).

¶ 61 Because the OTCs' interpretation is reasonable, the ordinance is at least ambiguous concerning whether the tax applies to the amounts that the OTCs retain as fees.

¶ 62 Once again, we strictly construe the ambiguous ordinance against the government and in favor of the taxpayer. *See City of Goodlettsville, Tennessee v. Priceline. com,* 844 F.Supp.2d 897, 913–14 (M.D.Tenn.2012) (resolving any ambiguity in taxing provision in favor of OTCs); *Alachua Cnty.,* 110 So.3d at 945–46 (same); *St. Louis Cnty.,* 344 S.W.3d at 714 (same); *City of Houston,* 357 S.W.3d at 715 (same). We therefore conclude that the tax base specified in the Lodger's Tax ordinance does not include the amounts retained by the OTCs as their fees.

¶ 63 Furthermore, and for the same reasons discussed earlier, we do not perceive that any statement of legislative intent or any legislative history would assist in resolving the ambiguity. We will not defer to the hearing officer's interpretation of the ordinance—which the City has not asked us to do anyway—because the hearing officer's view was apparently affected by his conflation of "representational nexus" principles with his reading of what the ordinance means. Consequently, to the extent the hearing officer concluded that the OTCs' fees are directly connected with the furnishing of lodging, he abused his discretion.

¶ 64 Of course, we express no opinion on whether the City could or should apply the Lodger's Tax to the OTCs' fees. *Cf. City of Columbus,* 693 F.3d at 651 ("[T]he decision to assign liability to online travel companies is one that remains in the hands of the

---

**8.** Contrary authority exists. *See, e.g., City of Atlanta v. Hotels.com,* 289 Ga. 323, 710 S.E.2d 766 (2011). But the many cases recognizing that the OTCs' fees are for services other than furnishing lodging tend to show the reasonableness of the OTCs' contention here.

legislature and not this Court."). Instead, we conclude only that, under the version of the Lodger's Tax ordinance at issue here, the City has not unambiguously done so.

### V. Remaining Contentions

¶ 65 Having resolved the ambiguities in the Lodger's Tax ordinance in favor of the OTCs, we do not reach their additional contentions concerning why the tax does not apply to them or their claim that the tax violates the Commerce Clause if it is construed to apply to them. For the same reason, we also decline to address the OTCs' allegation that the hearing officer should have recused himself, and the City's cross-appeal regarding the statute of limitations applicable to tax assessments.

### VI. Conclusion

¶ 66 We conclude that the hearing officer abused his discretion by misinterpreting the Lodger's Tax ordinance and misapplying it to the OTCs' fees paid by their customers. We affirm, on different grounds, the part of the district court's judgment vacating some of the tax assessments against the OTCs. We otherwise reverse the district court's judgment, and we remand with directions to vacate all of the tax assessments against the OTCs.

Taubman and Roy *, JJ., concur